JS 44   (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
Margaret Gansman

### DEFENDANTS
Resource America, Inc, Michael J. Bradley, Carlos C. Campbell, Jonathan Z. Cohen, Edward E. Cohen, Donald W. Delson, Hersh Kozlov, Andrew M. Lubin, Richard Reiss, JR., John S. White, C-III Capital Partners LLC, and Regent Acquisition Inc.

**(b)** County of Residence of First Listed Plaintiff   Montgomery, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Profy Promisloff & Ciarlanto, P.C.
100 N. 22nd Street, Unit 105
Philadelphia, PA 19103
Tel (215) 259-5156

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care / Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Sections 14(a) and 20(a) of the Securities Exchange Act of 1934
Brief description of cause:
Class Action for violations of the federal securities laws

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE

DOCKET NUMBER

DATE   7/14/16
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use
   **(b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the
   **(c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.  Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1787 Sentry Parkway W, Blue Bell, PA 19422    16    3820

Address of Defendant: One Crescent Drive, Suite 203, Navy Yard Corp. Center, Philadelphia PA 19112

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes□   No☑

Does this case involve multidistrict litigation possibilities?          Yes□   No☑

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
          Yes□   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
          Yes□   No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
          Yes□   No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
          Yes□   No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. □ Indemnity Contract, Marine Contract, and All Other Contracts
2. □ FELA
3. □ Jones Act-Personal Injury
4. □ Antitrust
5. □ Patent
6. □ Labor-Management Relations
7. □ Civil Rights
8. □ Habeas Corpus
9. ☑ Securities Act(s) Cases
10. □ Social Security Review Cases
11. □ All other Federal Question Cases
       (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. □ Insurance Contract and Other Contracts
2. □ Airplane Personal Injury
3. □ Assault, Defamation
4. □ Marine Personal Injury
5. □ Motor Vehicle Personal Injury
6. □ Other Personal Injury (Please specify)
7. □ Products Liability
8. □ Products Liability — Asbestos
9. □ All other Diversity Cases
       (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, JOSEPH PROFY , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 7/14/16          JOSEPH M. PROFY          72141
                              Attorney-at-Law                    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____          _____          _____
                              Attorney-at-Law                    Attorney I.D.#

CIV. 609 (5/2012)          JUL 14 2016

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

MARGARET GANSMAN,        :        CIVIL ACTION
                         :
            v.           :        16        3820
RESOURCE America, Inc et al :     NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.        ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)        (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.


7/14/16        _____        Plaintiff
**Date**        **Attorney-at-law**        **Attorney for**

215-259-5156        215-600-2642        pBofy@prolawpa.com
**Telephone**        **FAX Number**        **E-Mail Address**

(Civ. 660) 10/02

JUL 14 2016

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARGARET GANSMAN,                          )
                                            )
       Plaintiff,                       )
                                            )
v.                                          )
                                            )   Case No. _____
RESOURCE AMERICA, INC., MICHAEL J.          )
BRADLEY, CARLOS C. CAMPBELL,                )   CLASS ACTION
JONATHAN Z. COHEN, EDWARD E.                )
COHEN, DONALD W. DELSON, HERSH              )   JURY TRIAL DEMANDED
KOZLOV, ANDREW M. LUBIN,                    )
RICHARD REISS, JR., JOHN S. WHITE, C-       )
III CAPITAL PARTNERS LLC, and              )
REGENT ACQUISITION INC.,                    )
                                            )
       Defendants.                      )

## COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on May 23, 2016 (the "Proposed Transaction"), pursuant to which Resource America, Inc. ("Resource America" or the "Company") will be acquired by C-III Capital Partners LLC ("Parent") and its wholly-owned subsidiary, Regent Acquisition Inc. ("Merger Sub," and together with Parent, "C-III").

2.     On May 22, 2016, Resource America's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into a definitive agreement and plan of merger ("Merger Agreement"). Pursuant to the terms of the Merger Agreement, shareholders of Resource America will receive $9.78 in cash for each share of Resource America common stock,

in a transaction valued at approximately $207 million (the "Proposed Transaction").

3.      On June 16, 2016, defendants issued materially incomplete and misleading disclosures in the Preliminary Proxy Statement (the "Proxy") filed with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction. The Proxy is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4.      Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act").

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Resource America common stock.

9.      Defendant Resource America is a Delaware corporation and maintains its principal executive offices at One Crescent Drive, Suite 203, Navy Yard Corporate Center,

Philadelphia, Pennsylvania 19112.  The Company is a premier alternative asset management company that specializes in real estate and credit investments.  Resource America's common stock is traded on the NasdaqGS under the ticker symbol "REXI."

10.     Defendant Michael J. Bradley ("Bradley") has served as a director of Resource America since 2005.  According to the Company's Annual Proxy Statement filed with the United States Securities and Exchange Commission ("SEC") on Form DEF 14A on April 22, 2016 (the "2016 Proxy"), Bradley is a member of the Audit Committee and the Executive Committee.

11.     Defendant Carlos C. Campbell ("Campbell") has served as a director of Resource America since 1990.  According to the 2016 Proxy, Campbell is Chairman of the Compensation Committee and a member of the Audit Committee and the Nominating and Corporate Governance Committee.

12.     Defendant Jonathan Z. Cohen ("J. Cohen") has served as a director of Resource America since 2002, President since 2003, and Chief Executive Officer ("CEO") since 2004.  According to the 2016 Proxy, J. Cohen is a member of the Executive Committee.

13.     Defendant Edward E. Cohen ("E. Cohen") has served as a director of Resource America since 1988 and as Chairman of the Board since 1990.  According to the 2016 Proxy, E. Cohen is Chairman of the Executive Committee.

14.     Defendant Donald W. Delson ("Delson") has served as a director of Resource America since March 2012.  According to the 2016 Proxy, Delson is Chairman of the Investment Committee.

15.     Defendant Hersh Kozlov ("Kozlov") has served as a director of Resource America since January 2007.  According to the 2016 Proxy, Kozlov is Chairman of the

Nominating and Corporate Governance Committee and a member of the Compensation Committee.

16.     Defendant Andrew M. Lubin ("Lubin") has served as a director of Resource America since 1994.  According to the 2016 Proxy, Lubin is Chairman of the Audit Committee and a member of the Investment Committee and the Nominating and Corporate Governance Committee.

17.     Defendant Richard Reiss, Jr. ("Reiss") has served as a director of Resource America since January 2016.

18.     Defendant John S. White ("White") has served as a director of Resource America since 1993.  According to the 2016 Proxy, White is a member of the Compensation Committee and the Investment Committee.

19.     The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20.     Defendant Parent is a Delaware limited liability company with its principal place of business located at 5221 North O'Connor Boulevard, Suite 600, Irving, Texas 75039.

21.     Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Parent.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on her own behalf and as a class action on behalf of all holders of Resource America stock (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.     This action is properly maintainable as a class action.

24.     The Class is so numerous that joinder of all members is impracticable.  As of

April 28, 2016, there were approximately 20,840,814 shares of Resource America common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.     Preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate because defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

29.     Resource America is a premier alternative asset management company with over $20 billion of gross assets under management.

30.     The Company specializes in real estate and credit investments.  These investments are managed by experienced investment professionals with a diverse range of real estate and credit expertise.  The Company manages assets on behalf of both institutional and high net worth investors.

31.     Resource America identifies the best investments available through both its proprietary origination capabilities and secondary market expertise.  The Company continues to attract and retain top investment professionals with diverse backgrounds.

32.     On March 1, 2016, the Company issued a press release wherein it reported its operating results for the fourth quarter and year ended December 31, 2015.

33.     The Company reported adjusted net income attributable to common shareholders of $4.2 million, or $0.20 per common share-diluted, for the three months ended December 31, 2015, compared to adjusted net income attributable to common shareholders of $2.1 million, or $0.09 per common share-diluted, for the three months ended December 31, 2014.

34.     The Company's assets under management increased by $1.5 billion from December 31, 2014 to 2015.

35.     Additionally, the Company reported that Resource Real Estate Opportunity REIT, Inc. ("Opportunity REIT I"), a public non-traded real estate investment trust ("REIT") managed by the Company, which specializes in acquiring and managing distressed real estate assets, had the following highlights for the year ended December 31, 2015: (i) increased total assets to $1.1

billion at December 31, 2015, an increase of 12% from $978.4 million at December 31, 2014; and (ii) acquired $256.4 million of assets, placed or assumed financing of $139.3 million, and disposed of $87.7 million of multifamily assets.

36.     Resource Real Estate Opportunity REIT II, Inc. ("Opportunity REIT II"), a public non-traded REIT managed by the Company, which specializes in acquiring multifamily rental properties and selected loans, had the following highlights: (i) raised a record $196.0 million during the three months ended December 31, 2015 and completed fundraising in February 2016 with a total equity capital raise of $556.0 million; (ii) increased total assets to $596.4 million at December 31, 2015, an increase of 634% from $81.2 million at December 31, 2014; and (iii) acquired $170.7 million of assets and placed $42.5 million of financing during the three months ended December 31, 2015. Acquisitions and financings totaled $372.8 million and $116.2 million, respectively, for the year ended December 31, 2015.

37.     Resource Real Estate Diversified Income Fund, a public closed-end real estate focused investment fund managed by the Company, raised $100.4 million since inception, including $65.2 million during the year ended December 31, 2015.

38.     The Company further reported that, on February 16, 2016, Resource Innovation Office REIT, Inc., a company-sponsored REIT that will focus on acquiring office buildings, broke escrow, and Resource Innovation Office Advisor, LLC, a subsidiary of Resource Real Estate, Inc., which is a wholly-owned subsidiary of the Company, will be the external manager.

39.     The Company's real estate operating segment increased its gross assets under management at December 31, 2015 to $4.1 billion, an increase of $700.3 million, or 21%, from December 31, 2014.

40.     Moreover, real estate revenues increased 79% and 44% to $24.9 million and $79.1 million for the three months and year ended December 31, 2015, respectively, compared to $13.8 million and $54.9 million for the three months and year ended December 31, 2014.

**The Process Leading Up to the Merger Agreement**

41.     During the fourth quarter of 2014, representatives of C-III contacted Resource America to discuss a potential acquisition of Resource America.  The Proxy fails to disclose the nature of the pre-existing relationship between Resource America and C-III.

42.     In early December 2014, Individual Defendants J. Cohen and E. Cohen, along with Jeffrey F. Brotman ("Brotman"), Resource America's Executive Vice President and Senior Counsel, met with Andrew Farkas ("Farkas"), CEO of C-III, and other representatives of C-III to discuss a potential transaction.

43.     Between December 2014 and February 2015, Resource America, C-III, and their advisors engaged in discussions regarding a potential transaction and C-III conducted due diligence.

44.     According to the Proxy, "[t]he parties [] never reached an agreement on price, and C-III terminated discussions on March 3, 2015 after informing Resource America that it planned to pursue other opportunities at the time."  The Proxy fails to disclose the terms of any indications of interest or proposals submitted by C-III during this time period.

45.     On November 13, 2015, a representative of "Company A" contacted Brotman and indicated that Company A was potentially interested in pursuing a strategic transaction with Resource America, including an acquisition of all or part of the Company.

46.     On November 18, 2015, Resource America and Company A entered into a confidentiality agreement, which included "a customary standstill provision."  The Proxy fails to

disclose whether the confidentiality agreement contained a "don't ask, don't waive" ("DADW") provision.

47.     J. Cohen and Brotman subsequently met with members of Company A's management to discuss potential transactions, and Company A engaged in due diligence.

48.     On January 18, 2016, the Board met and determined to engage Evercore Group, L.L.C. ("Evercore") as the Company's financial advisor.

49.     On January 26, 2016, Company A submitted a non-binding proposal to acquire the Company for $7.00 per share.

50.     During February 2016, Resource America and Evercore held discussions and negotiated confidentiality agreements with an undisclosed number of parties.

51.     On February 8, 2016, Farkas met with J. Cohen to discuss C-III's potential interest in pursuing a transaction with Resource America.

52.     On February 9, 2016, Company A requested a response to its proposal.

53.     Resource America subsequently executed confidentiality agreements with potentially interested parties.  The Proxy fails to disclose whether the confidentiality agreements contained DADW provisions.

54.     On April 4 and 5, 2016, Resource America received eight proposals.  Six were to acquire 100% of the outstanding Resource America stock, and two were to acquire specific assets of Resource America.  The Proxy fails to disclose the terms of each of the proposals, including the financial terms.

55.     On April 6, 2016, the Board met and determined to invite only two parties to a second round of bidding: Company A and "Company B."

56.     Nevertheless, "Company C" and "Company D" subsequently submitted proposals to acquire the Company for $8.00 per share in cash, and "Company E" submitted a proposal for $8.50 per share in cash.

57.     Between April 21, 2016 and 26, 2016, Resource America entered into confidentiality agreements with a potential strategic buyer and a potential financial buyer.  The Proxy fails to disclose whether the confidentiality agreements contained DADW provisions.

58.     On May 3, 2016, Resource America entered into a confidentiality agreement with C-III.

59.     On May 6, 2016, C-III submitted a proposal to acquire all of the outstanding shares of Resource America for $9.00 per share.

60.     On May 16, 2016, C-III submitted a proposal of $9.25 per share, and Company A increased the cash component of its bid from $7.50 to $8.00 per share.

61.     On May 22, 2016, Company C informed Resource America that it would increase its bid to $9.00 per share in cash.

62.     The same day, the Board met and Evercore rendered its opinion that merger consideration of $9.78 per share in cash would be fair from a financial point of view to the Company's stockholders, as "management expected C-III to offer between $9.78 and $9.80 per share in cash."  The Proxy fails to disclose management's basis for this expectation, as well as whether Evercore conducted financial analyses regarding the actual then-current offers of $9.00 per share from C-III and Company C.  The Board then unanimously determined that the merger with C-III was fair to and in the best interests of Resource America's stockholders and approved the proposed transaction.

63.     *Following* the May 22 Board meeting and the Board's approval of a transaction with C-III, C-III revised its offer to $9.78 per share in cash.

64.     The parties executed the Merger Agreement later on May 22.

**The Inadequate Proposed Transaction and Preclusive Deal Protection Devices**

65.     To the detriment of the Company's stockholders, the terms of the Merger Agreement substantially favor C-III and are calculated to unreasonably dissuade potential suitors from making competing offers.

66.     For example, the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Section 8.03(a) of the Merger Agreement states:

> (a) The Company and its controlled Affiliates shall, and the Company shall instruct its Representatives to, immediately cease any discussions or negotiations with any Person that may be ongoing with respect to a Company Acquisition Proposal. From and after the date of this Agreement until the earlier to occur of the Effective Time or the termination of this Agreement in accordance with Article 10, neither the Company nor any of its Subsidiaries nor any of their respective officers or directors shall, and the Company shall instruct its and its Subsidiaries' Affiliates and other Representatives not to, directly or indirectly, (i) solicit, initiate or knowingly encourage (including by way of furnishing any non-public information), or knowingly take any other action designed to facilitate, any inquiry or the making or submission of any inquiry, proposal, indication of interest or offer which constitutes, or would reasonably be expected to lead to, a Company Acquisition Proposal, (ii) subject to Section 8.03(b), approve or recommend, or propose to approve or recommend, a Company Acquisition Proposal, (iii) subject to Section 8.03(b), approve or recommend, or propose to approve or recommend, or execute or enter into any letter of intent, memorandum of understanding, merger agreement or other agreement, arrangement or understanding relating to a Company Acquisition Proposal (other than an Acceptable Confidentiality Agreement) or a Superior Proposal (each an "Alternative Acquisition Agreement"), (iv) enter into, continue or otherwise

participate in any discussions or negotiations regarding any Company Acquisition Proposal, or (v) publicly announce an intention to do any of the foregoing[.]

67.     Further, the Company must advise C-III, within forty-eight hours, of any proposals or inquiries received from other parties, including, *inter alia*, the material terms and conditions of the proposal and the identity of the party making the proposal. Section 8.03(d) of the Merger Agreement states:

> (d) In addition to the obligations of the Company and Parent set forth in Section 8.03(a), Section 8.03(b) and Section 8.03(c), the Company shall (i) promptly (and in any event within 48 hours) notify Parent orally and in writing of any proposal, indication of interest or offer which constitutes a Company Acquisition Proposal that are received by, or any discussions or negotiations are sought to be initiated regarding a Company Acquisition Proposal with, the Company (or any of its Representatives), indicating, in connection with such notice, the identity of the Person or group of Persons making the proposal, indication of interest or offer and the material terms and conditions of any such proposal, indication of interest or offer (including, if applicable, copies of any written proposals or offers, including proposed agreements), (ii) keep Parent reasonably informed, on a reasonably prompt basis (and in any event within 48 hours) of the status of any discussions or negotiations with respect to any such proposals or offers and the details of any material changes to the status or material terms of any such proposal, indication of interest or offer (including any material amendments thereto or any change to the scope or material terms or conditions thereof, and including copies of definitive agreements) and (iii) indicate to Parent promptly (and in any event within 48 hours) whether the Company has furnished nonpublic information to such Person or group of Persons.

68.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants C-III a "matching right" with respect to any "Superior Proposal" made to the Company. Section 8.03(b) of the Merger Agreement provides:

> (b) Except as permitted pursuant to this Section 8.03(b) or Section 8.03(c), the Company Board shall not (i) effect a Company Adverse Recommendation Change or (ii) cause or permit the Company or any of its Subsidiaries to enter into any Alternative Acquisition Agreement. Notwithstanding anything to the contrary in this Agreement, if (A) a written Company Acquisition Proposal that was not solicited in violation of this Agreement is made to the Company by a Third Party and such Company Acquisition Proposal is not withdrawn and (B) the Company

12