Board concludes in good faith, after consultation with the Company's outside financial advisors and outside legal counsel, that such Company Acquisition Proposal constitutes a Superior Proposal, then prior to receipt of the Company Stockholder Approval, and subject to compliance with this Section 8.03(b), the Company Board may (x) effect a Company Adverse Recommendation Change or (y) cause the Company to terminate this Agreement in accordance with the procedures set forth in Section 10.01(d)(ii) if the Company Board concludes in good faith, after consultation with the Company's outside legal counsel, that the failure to make a Company Adverse Recommendation Change or cause the Company to terminate this Agreement in accordance with the procedures set forth in Section 10.1(d)(ii) would be reasonably likely to be inconsistent with its fiduciary duties under applicable Laws; provided, however, that, prior to making any Company Adverse Recommendation Change or terminating this Agreement:

(i) the Company Board shall provide Parent at least four (4) Business Days' prior written notice of its intention to take such action, which notice shall include the information with respect to the Superior Proposal that is specified in this Section 8.03(b) and the material terms and conditions thereof (including the identity of the Third Party making the Superior Proposal, as well as a complete copy of the Superior Proposal that is the basis of such action);

(ii) during the four (4) Business Days following such written notice (or such shorter period as is specified below), the Company Board and its Representatives shall negotiate in good faith with Parent (to the extent Parent desires to negotiate) regarding any revisions to the terms of the transactions contemplated hereby proposed by Parent in response to such Superior Proposal; and

(iii) at the end of such four (4) Business Days, the Company Board concludes in good faith, after consultation with the Company's outside legal counsel and financial advisors (and taking into account any adjustment or modification of the terms of this Agreement proposed in writing by Parent), that the Company Acquisition Proposal continues to be a Superior Proposal and that the failure to make such Company Adverse Recommendation Change or cause the Company to terminate this Agreement in accordance with the procedures set forth in Section 10.1(d)(ii) would still be reasonably likely to be inconsistent with its fiduciary duties under applicable Laws.

Any material amendment or modification to any Superior Proposal (including any change to the financial terms thereof) will be deemed to be a new Company Acquisition Proposal for purposes of this Section 8.03, and the Company shall promptly (and in any event within 24 hours of occurrence) notify Parent of any such new Company Acquisition Proposal and the Parties shall comply with the provisions of this Section 8.03(b) with respect thereto, but with references therein to "4 Business Days" deemed to be references to "3 Business Days"; provided, that in the event there is a Company Adverse Recommendation Change made in compliance with this Section 8.03(b) with respect to a Superior Proposal, the

Company shall only enter into an Alternative Acquisition Agreement with respect thereto by terminating this Agreement in accordance with Section 10.01(d)(ii).

69. Further locking up control of the Company in favor of C-III is Section 10.03 of the Merger Agreement, which contains a provision for a "termination fee" of $6.725 million payable by the Company to C-III.

70. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

71. Additionally, J. Cohen, E. Cohen, and their affiliates entered into a voting and support agreement, pursuant to which they have agreed to vote their shares in favor of the Proposed Transaction. Accordingly, such shares are already locked up in favor of the merger.

72. The consideration to be paid to plaintiff and the Class in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

73. According to *Yahoo! Finance*, at the time of the announcement of the Proposed Transaction and thereafter, at least one analyst set a price target for Resource America of $11.00 per share.

74. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

### *Interests of the Company's Officers and Directors*

75. Certain officers and directors stand to receive substantial benefits as a result of the Proposed Transaction.

76. For example, in connection with the Merger Agreement, the Company entered into amended employment agreements with, among others, Alan F. Feldman ("Feldman"), the Company's Senior Vice President and CEO of Resource Real Estate (the "Feldman Amendment"), and Thomas C. Elliott ("Elliott"), the Company's Executive Vice President and Chief Financial Officer (the "Elliott Agreement"), pursuant to which they stand to receive significant benefits. Among other things, the Feldman Agreement provides for base compensation of $375,000 for Feldman, and a minimum of $1.462 million in incentive compensation. Additionally, the Elliott Agreement provides for, *inter alia*, an initial term of two years, with automatic extensions, for Elliott. Elliott will be entitled to base compensation of $400,000 per year, a minimum of $1 million in incentive compensation based on Elliott's performance, and a signing bonus of $1.65 million. The Elliott Agreement also provides for a retention bonus of $1.65 million.

77. In addition, Individual Defendant J. Cohen, Brotman, Elliott, Feldman, and Jeffrey D. Blomstrom ("Blomstrom"), Resource America's Senior Vice President, stand to receive $8,074,974, $6,778,191, $5,975,976, $4,768,136, and $3,007,117, respectively, in golden parachute compensation.

78. Moreover, the Company's officers and directors stand to receive substantial payments in connection with the termination of the management agreement with Resource Capital Corp. (the "Management Agreement"), pursuant to which Resource America has provided certain investment management and administrative services to Resource Capital Corp. since March 2005. J. Cohen is the CEO and a member of the board of directors of Resource Capital Corp., and Blomstrom and Brotman are executive officers of Resource Capital Corp. The Company's directors and officers own an aggregate of 828,878 shares of Resource Capital

15

Corp. Resource Capital Corp. will receive $1.5 million as a result of the termination of the Management Agreement.

79. Under the Merger Agreement, Resource America may also establish a cash-based retention program up to $11.03 million for Resource America employees.

***The Materially Incomplete Proxy***

80. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction. As discussed below and elsewhere herein, the Proxy omits material information that must be disclosed to Resource America's stockholders to enable them to render an informed decision with respect to the Proposed Transaction.

81. The Proxy omits material information with respect to the process and events leading up to the Proposed Transaction, as well as the opinions and analyses of the Company's financial advisor, Evercore. This omitted information, if disclosed, would significantly alter the total mix of information available to Resource America's stockholders.

82. For example, with respect to Resource America's projections, the Proxy fails to disclose: (i) the unlevered after-tax free cash flow projections for Resource America; (ii) the changes in net working capital projections; (iii) the terminal year projections to which the selected perpetuity growth rates were applied, and the line items for this period, including unlevered free cash flows and changes in working capital, as well as all other lines presented for earlier years; and (iv) the amount of stock-based compensation expense in each year, including the terminal period.

83. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the basis for selecting perpetuity growth rates of (2.0%)-4.0%; (ii) the "certain adjustments" made to cash, cash equivalents, and/or debt; (iii) the reason(s) Evercore did not

value the "Specified Assets and Liabilities"; and (iv) management's estimate of the value of the Specified Assets and Liabilities, as well as the methodology used by management and the underlying inputs used to derive this value.

84. The Proxy fails to disclose the nature of the pre-existing relationship between Resource America and C-III.

85. The Proxy fails to disclose the terms of any indications of interest or proposals submitted by C-III between December 2014 and February 2015.

86. The Proxy fails to disclose whether any of the confidentiality agreements entered into between Resource America and the potential bidders contained DADW provisions.

87. The Proxy fails to disclose the terms of each of the proposals received on April 4 and 5, 2016, including the financial terms.

88. The Proxy fails to disclose whether Evercore conducted financial analyses regarding the actual offers of $9.00 per share from C-III and Company C that were pending as of May 22, 2016. If so, the Proxy must disclose fair summaries of those analyses.

89. The Proxy fails to disclose the basis for management's expectation on May 22 that C-III would "offer between $9.78 and $9.80 per share in cash."

90. The Proxy fails to disclose the timing and nature of all communications regarding future employment or directorship of Resource America's officers and directors, including who participated in all such communications.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Resource America**

91. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

92. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Resource America is liable as the issuer of these statements.

93. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

94. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

95. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

96. The Proxy is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

97. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

98. Because of the false and misleading statements in the Proxy, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and C-III

99. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

100. The Individual Defendants and C-III acted as controlling persons of Resource America within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Resource America and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

101. Each of the Individual Defendants and C-III was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

102. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy.

103. C-III also had direct supervisory control over the composition of the Proxy and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy.

19

104. By virtue of the foregoing, the Individual Defendants and C-III violated Section 20(a) of the 1934 Act.

105. As set forth above, the Individual Defendants and C-III had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 14, 2016

Respectfully submitted,

_/s/ Joseph M. Profy_
Joseph M. Profy

**PROFY PROMISLOFF & CIARLANTO, P.C.**
JOSEPH M. PROFY (ID# 77141)
DAVID M. PROMISLOFF (ID# 200971)
JEFFREY J. CIARLANTO (ID# 205838)
100 N. 22nd Street, Unit 105
Philadelphia, PA 19103
Tel: (215) 259-5156
Fax: (215) 600-2642
profy@prolawpa.com
david@prolawpa.com
ciarlanto@prolawpa.com

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
Gina M. Serra
Jeremy J. Riley
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RYAN & MANISKAS, LLP**
Katharine M. Ryan
Richard A. Maniskas
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
(484) 588-5516

## CERTIFICATION OF PLAINTIFF

I, MARGARET GANSMAN ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon the execution of this Certification.

4. Plaintiff's purchase and sale transactions in the Resource America, Inc. (NasdaqGS: REXI) security that is the subject of this action during the class period is/are as follows:

PURCHASES

| Buy Date | Shares | Price per Share |
|---|---|---|
| 2-21-07 | 100 | 27.068 |
| 2-6-07 | 100 | 28.14 |
| 9-6-06 | 100 | 20.213 |
| 2-16-01 | 100 | 4.87 |
| 2-12-2000 | 100 | 4.175 |
| 6-2-99 | 300 | 5.897 |
| 4-15-99 | 200 | 5.112 |
|  |  |  |

SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including

Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except as described below: _____.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23RD day of June, 2016.

_____
MARGARET GANSMAN